**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CALVAN DAVIS,                          :
                                       :    Civil Action No. 04-5671 (KSH)
            Petitioner,                :
                                       :
       v.                              :    **OPINION**
                                       :
THE FEDERAL BUREAU OF PRISONS,:
et al.,                                :
            Respondents.               :

**APPEARANCES:**

Petitioner pro se                  Counsel for Respondents
Calvan Davis                       Susan J. Steele
F.C.I. Fort Dix                    U.S. Attorney's Office
P.O. Box 1000                      970 Broad Street
Fort Dix, NJ 08640                 Suite 700
                                   Newark, NJ 07102

**HAYDEN**, District Judge

    Petitioner Calvan Davis, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The Respondents are the Federal Bureau of

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Prisons (the "Bureau" or "BOP"), BOP Director Harley G. Lappin, and Warden John Nash.

For the reasons expressed herein, the Petition must be denied.

## I. BACKGROUND

In 2004, Petitioner pleaded guilty to one count of Dealing in Counterfeit Obligations and Securities in violation of 18 U.S.C. § 473. On September 8, 2004, this Court sentenced Petitioner to a term of imprisonment of 18 months. On October 18, 2004, Petitioner self-reported to the Federal Correctional Institution at Fort Dix, New Jersey, to commence service of his sentence, where he remains confined.

Petitioner's projected release date is February 3, 2006. Petitioner has been advised that his "Pre-Release Preparation Date," or the earliest date he would be considered for transfer to a Community Corrections Center for pre-release programming pursuant to 18 U.S.C. § 3624(c), is December 19, 2005.

Petitioner contends that his Pre-Release Preparation Date was determined pursuant to a change in BOP policy regarding pre-release transfer to CCCs that took place in December 2002. Petitioner contends that the December 2002 policy is "illegal" and he requests that the Respondents be ordered to reconsider him for pre-release transfer to a CCC as of August 3, 2005.

Petitioner has not exhausted his administrative remedies and asserts that exhaustion would be futile.

Respondents have filed an answer in which they assert that this Court lacks jurisdiction to proceed with this § 2241 Petition, that the Petition should be dismissed for failure to exhaust administrative remedies, that Petitioner's claim is moot because the December 2002 policy is no longer in force, and that the more recent regulations governing pre-release transfer to a CCC (which they contend will govern Petitioner's pre-release programming) are valid.

Petitioner has not replied to the Answer, nor has he sought leave to file an Amended Petition addressing Respondents' arguments in support of the current regulations.

## II. ANALYSIS

A. Jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2241(a) and (c) in that Petitioner challenges his custody, in this district, under the authority of the United States and in violation of the laws of the United States. See United States v. Ferri, 686 F.2d 147, 158 (3d Cir. 1982), cert. denied, 459 U.S. 1211 (1983) (claims attacking the execution of a petitioner's sentence are properly brought under 28 U.S.C. § 2241). See also Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991) ("challenges to the length,

appropriateness or conditions of confinement are properly brought under 28 U.S.C. § 2241").

Indeed, "Section 2241 of title 28 has long been recognized as the basis for challenging the execution of the sentence of a person in federal custody or a person sentenced for violating a federal criminal statute." Zucker v. Menifee, 2004 WL 102779, *3 (S.D.N.Y. January 21, 2004) (citing Maleng v. Cook, 490 U.S. 488, 493 (1989) (per curiam)). Additionally, this Court has the authority to compel the BOP to exercise its authority to select and designate a place for service of sentence. See McCarthy v. Doe, 146 F.3d 118 (2d Cir. 1998). Habeas corpus relief under 28 U.S.C. § 2241 is available to effectuate this authority to the extent that the prisoner is in any form of "custody" in this district. See Hensley v. Municipal Court, 411 U.S. 345 (1973).

B. Exhaustion

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000). The exhaustion doctrine promotes a number of desirable goals including filtering out frivolous claims and developing a full and complete record for trial purposes; nevertheless, exhaustion of administrative

4

remedies is not required where exhaustion would not effectuate these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000).

Respondents assert that Petitioner did not exhaust his administrative remedies, see 28 C.F.R. § 542.10 et seq. Here, however, there is no need to exhaust in order to develop a factual record, nor does this matter require application of the agency's particular expertise. Petitioner does not challenge the application of the BOP's policies to him, but instead challenges whether the December 2002 policy accurately implements the statute pursuant to which it was promulgated. The BOP's December 2002 policy is categorical, meaning that the BOP will not consider a transfer to CCC-type confinement until the last 10% of any prisoner's sentence. This is a question within the expertise of the courts. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").

C.   Statutory Language and the Changes in BOP policy

Federal law imposes upon the Bureau of Prisons the obligation and discretion to designate the place of a prisoner's imprisonment, as follows:

5

>    (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoners's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
>    (1) the resources of the facility contemplated;
>
>    (2) the nature and circumstances of the offense;
>
>    (3) the history and characteristics of the prisoner;
>
>    (4) any statement by the court that imposed the sentence--
>
>    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
>    (B) recommending a type of penal or correctional facility as appropriate; and
>
>    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.
>
>    In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

In addition, federal law provides that prisoners shall, to the extent practicable, serve the last portion of their imprisonment under conditions that will facilitate their transition from prison life to the community.

6

> (c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. ...

18 U.S.C. § 3624(c).

In implementing pre-release custody programming under this statute, the BOP has traditionally used a variety of community-based programs, including CCCs, Comprehensive Sanctions Centers ("CSCs"), the Mothers and Infants Together ("MINT") program, and Intensive Confinement Centers ("ICCs"), as well as home confinement.  BOP Program Statement ("PS") 7310.04, <u>Community Corrections Center (CCC) Utilization and Transfer Procedure</u> (Dec. 16, 1999), provides guidance to BOP staff as to the administration of pre-release programs generally.

Before December 2002, the BOP interpreted these statutes to allow the BOP to designate inmates to serve any or all of their terms of imprisonment in Community Corrections Centers.  The BOP also had a long-standing policy of considering prisoners for up to 180 days pre-release placement in a CCC, regardless of the length of sentence.

On December 13, 2002, the Office of Legal Counsel of the United States Department of Justice prepared a Memorandum Opinion for Deputy Attorney General Larry D. Thompson on the question "whether the BOP has general authority, either upon the

7

recommendation of the sentencing judge or otherwise, to place [a federal offender whom the BOP deems to be low-risk and nonviolent and who has received a short sentence of imprisonment] directly in community confinement at the outset of his sentence or to transfer him from prison to community confinement during the course of his sentence."

The Office of Legal Counsel ("OLC") began its analysis with a review of Federal Sentencing Guidelines provisions addressing imprisonment and community confinement and federal court opinions concluding that community confinement does not constitute "imprisonment" for purposes of these Sentencing Guidelines provisions. The OLC progressed from this analysis to a determination that a community corrections center ("CCC") can not constitute a "penal or correctional facility" that may serve as a place of imprisonment within the meaning of § 3621(b). If a CCC were considered a place of imprisonment within the meaning of § 3621(b), the OLC reasoned, "then the time limitation in section 3624(c) on BOP authority to transfer a prisoner to a non-prison site – i.e., for a period, not to exceed six months, of the last 10% of the term of his sentence – would be rendered null with respect to community confinement." The OLC concluded that the practice, pursuant to the BOP's interpretation of § 3621(b), of placing certain prisoners in CCC for a period longer than that mandated by the specific language of § 3624(c) was not lawful.

Based upon this OLC Memorandum Opinion, on December 16, 2002, Deputy Attorney General Larry D. Thompson sent a Memorandum to BOP Director Kathleen Hawk Sawyer advising her the that BOP's prior interpretation of § 3621(b) as including CCCs is unlawful and directing the BOP to cease placement of federal prisoners in CCCs except for the lesser of six months or ten percent of the sentence imposed on the offender.

On December 20, 2002, the BOP adopted the OLC legal opinion in a memorandum mandating that "Pre-release programming CCC designations are limited in duration to the last 10% of the prison sentence, not to exceed six months." This "ten-percent rule" represented a reversal of long-standing BOP policy to consider prisoners for pre-release CCC placement for up to the final six months of their sentences (the "six-months rule"), regardless of the total term of imprisonment. See, e.g., Schorr v. Menifee, 2004 WL 1320898, *2 (S.D.N.Y. June 14, 2004) (and cases cited therein). The new ten-percent rule was instituted without notice to the public and was not reflected in any BOP Program Statement. The new ten-percent rule generated a wave of litigation from federal prisoners seeking its invalidation on various grounds; federal courts addressing the issues raised in this litigation were sharply divided as to the validity of the new policy. Id. at *3 (collecting cases). See also Miranda v. Miner, Civil Action No. 04-2590(JBS) (D.N.J. Aug. 20, 2004).

9

Responding to this division, on August 18, 2004, the BOP published proposed regulations regarding placement in CCCs or home confinement. See 69 Fed.Reg. 51213 (2004). Because numerous U.S. District Courts had held that a CCC is a "penal or correctional facility" within the meaning of § 3621(b) and that the BOP had discretion under 18 U.S.C. § 3621(b) to place offenders, sentenced to a term of imprisonment, into CCCs at any time during their imprisonment, the proposed regulations reflected an acquiescence in that statutory construction and a determination how to exercise that discretion. Specifically, the BOP determined to exercise its discretion categorically to permit designation of inmates to community confinement[2] only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months, except where statutorily-created programs explicitly authorize greater periods of community confinement.

Following a period for comment, the BOP issued final regulations on January 10, 2005, to become effective on February 14, 2005.[3] 70 Fed. Reg. 1659 (2005). With one minor change not

---

[2] "Community confinement" is defined to include community corrections centers (also known as "halfway houses") and home confinement.

[3] During the comment period, two U.S. Courts of Appeals issued opinions finding that § 3621(b) authorizes the Bureau to place inmates in CCCs at any time during service of their prison sentence and that this authority is not limited by § 3624(c) to the last ten percent of the sentence being served. See Elwood v.

10

relevant here, the BOP adopted the proposed rules as final. See 28 C.F.R. §§ 570.20, 570.21 (the "2005 Regulations").

D. Petitioner's Claims

It is apparent that Petitioner's pre-release programming will be determined pursuant to the 2005 Regulations. Thus, the promulgation of 28 C.F.R.. §§ 570.20 and 570.21 has mooted Petitioner's challenge to the December 2002 policy. See Pimental v. Gonzalez, 367 F.Supp.2d 365, 372 (E.D.N.Y. May 3, 2005).

Petitioner has not challenged the 2005 Regulations. Accordingly, this Court expresses no opinion as to the validity of the 2005 Regulations or of their application to Petitioner.

Finally, to the extent the Petition could be construed as asserting an absolute right under § 3624(c) to six months pre-release placement in a CCC, it is without merit. Section 3624(c) requires only that pre-release custody "be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." Under the statute, this transitional pre-release custody need not take the form of CCC placement for a specified period of time or, indeed, for any period of time. See, e.g., Prows v. FBOP, 981 F.2d 466 (10th Cir. 1992), cert. denied, 510 U.S. 830 (1993); United States v. Laughlin, 933 F.2d 786 (9th

---

Jeter, 386 F.3d 842 (8th Cir. 2004) and Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004).

Cir. 1991); Gambino v. Gerlinski, 96 F.Supp.2d 456 (M.D. Pa. 2000), aff'd, 216 F.3d 1075 (3d Cir. 2000).

### III. CONCLUSION

For the reasons set forth above, the Petition must be denied. An appropriate order follows.

_____
Katharine S. Hayden
United States District Judge

Dated: 9/19/05